JOE CHANG and DRAGON LIGHT CO. Ltd., Plaintiffs

v.

MIKE FUIAVA, NATIONAL IMPORT & EXPORT ENTERPRISE,
and NATIONAL IMPORT & EXPORT, Defendants

High Court of American Samoa
Trial Division

CA No. 59-85

October 2, 1989

Before KRUSE, Chief Justice, TAUANU'U, Chief Associate Judge, and
VAIVAO, Associate Judge.

Counsel: For Plaintiffs, Tautai A.F. Fa'alevao
Defendant Mike Fuiava pro se

*Factual Background*

Plaintiff Chang and defendant Fuiava went into business together
for purposes of merchandising in American Samoa. Chang is a merchant
of Western Samoa, where he operates a business, Dragon Light Co.
Ltd., a Western Samoan corporation and the co-plaintiff herein. Also,

1

Chang had either the goods, or at least access to a credit facility, to supply the venture with inventory.

Fuiava, on the other hand, had neither business experience nor capital to contribute to the venture. However, as the American Samoan party, he had the responsibility of securing the requisite license to do business in the territory.[1]

At first the parties went through the motions of setting up a corporation under the name "National Import Export Company, Inc." Articles were duly adopted which stipulated that sixty percent of the corporate stock would be held by Chang and his family, with the remaining forty percent held by Fuiava and his family. The articles further named Chang as President and Fuiava as Vice President.

As the approval of corporate status proved to be time consuming, the parties decided to obtain in the interim a license in Fuiava's name in order to open for business immediately. Fuiava did indeed secure a business license as a proprietorship trading under the name "National Import & Export Enterprize." After opening a bank account and taking delivery of a variety of goods supplied on credit by the plaintiff, Dragon Light Co. Ltd., the parties began selling at a location in Pago Pago. Although a corporate charter was eventually granted, the parties continued doing business under the license issued to Fuiava personally.[2]

In time, Chang notified Fuiava that he desired to terminate their business relationship and he proposed to Fuiava a division of the inventory between them. With some American Samoan relatives of his wife, Chang formed another local corporation called "Dragon Light, Inc.," which was opened for business in Happy Valley and retailed in the same lines. Fuiava retained a certain quantity of the inventory for which an invoice, drawn on Dragon Light Co. Ltd. letterhead, was made out

---

[1] The territorial licensing laws — A.S.C.A. §§ 27.0201 et seq. — are in certain aspects parochial in effect. An applicant for a business license who is neither an American Samoan nor a "permanent" resident of the territory is subject to greater scrutiny and regulation, particularly if the activity for which licensure is sought is already adequately covered by local businesses.

[2] The corporation, for purposes of the business licensing laws, would have been treated as a non-American Samoan given the stock issue contemplated by the articles of incorporation which designated the majority shares in non-American Samoans. *See* A.S.C.A. § 27.0207.

in the amount of $35,945.50 to "National Import & Export." This invoice also contained a paragraph reciting an agreement "that a weekly payment of $500.00 (US) to be paid [sic] to Mr. Joe Chang by Mr. Mike Fuiava on behalf of the NATIONAL IMPORT & EXPORT, commencing 8th December 1984." This invoice/agreement was signed by Chang on behalf of Dragon Light Co. Ltd. as its director, while Fuiava signed as "Vice-President" on behalf of National Import & Export.

Fuiava found a location for himself in Nu'uuli where he set up shop and for the first few months he managed to make the scheduled payments to Chang. It did not take very long, however, for Fuiava to learn that there was more to business than anticipated riches. He was just not generating the sort of sales envisaged at the time of the invoice/agreement and he began to fall progressively into arrears. Plaintiffs filed suit to enforce the invoice/agreement.

Notwithstanding the filing of suit, there was dialogue between the parties in the hope of resolving arrears and reinstating the payment schedule. Despite Fuiava's further attempts at business, the situation with sales did not improve. He therefore notified Chang that he would return the remaining inventory with him and pay the difference. Over the course of several days, Fuiava's wife and some relatives delivered pickup truckloads of the inventory to the Happy Valley premises of Dragon Light, Inc. There, a count was made by Chang's sister-in-law or shop employee as each load was delivered. Fuiava's wife was promised a copy of the count by Chang's sister-in-law but none was ever delivered.

### The Suit

The controversy before us is somewhat puzzling. For reasons unknown, the matter between the parties was never finalized. Nobody bothered to reconcile what Fuiava had returned and paid for against what he was initially given. It seems that the goods he had returned were eventually commingled with whatever stock Dragon Light, Inc., possessed. As to what happened to the stock count taken by Chang's sister-in-law, the Court was never told; however, the significance of the suit against Fuiava became apparent with Chang's testimony that the business venture with his American Samoan in-laws incurred a loss of some $70,000.

Chang nonetheless insists that the invoice/agreement continues to render Fuiava liable to plaintiff Dragon Light Co. Ltd. He opined on

3

the stand that Fuiava's delivery of the goods (subject to the invoice/agreement) to Dragon Light, Inc., a distinct and separate corporate entity, did not constitute a restitution by Fuiava to plaintiff Dragon Light Co. Ltd. Additionally, Chang argues that when he agreed to Fuiava's return of the goods, it was Fuiava's duty and responsibility to do the stock taking and to reconcile an accounting of his indebtedness to the plaintiff corporation.

Fuiava, on the other hand, testified that as far as he was concerned, his obligations to Chang and Dragon Light Co. Ltd. were settled, except for that which he owes on the goods he had sold less the installment payments which he had already made pursuant to the invoice/agreement. Chang, however, has never billed him.

*Conclusions*

We are in agreement with Fuiava's position that he is liable on account with Dragon Light Co. Ltd. and that the extent of his liability is for the goods he had sold or failed to return less the payments he had paid to Chang. In so concluding, we reject Chang's alternative and somewhat inconsistent theories: that the return of the inventory held by Fuiava did not vary the effect of the invoice/agreement, which remained in full force and effect; or that Fuiava was responsible for providing an accounting of the returned goods to Dragon Light Co. Ltd., and by failing to do so remains liable on terms of the invoice/agreement. Neither theory has any support in law or on the evidence. Further, Chang's resort to legal niceties about separate corporate identities in the attempt to get around the undisputed fact that Fuiava returned the goods is, at best, desperate and also thoroughly unconvincing. The parties in their dealings with each other and with the government licensing authorities had only so much respect for corporate formality as it suited their convenience.[3]

Finally, in terms of what is actually owed by Fuiava to Chang and Dragon Light Co. Ltd., the evidence was just not there to permit the Court to make any meaningful finding. The evidence at its best

---

[3] Indeed, if we accepted Chang's argument on corporate legalities, then we would also be required to question why Fuiava should not have the benefit of limited liability, since the invoice/agreement purported on its face to be a dealing between the Dragon Light Co. Ltd. and arguably the American Samoan corporate entity National Import Export Co., Inc. Fuiava signed as "Vice-President" rather than as proprietor.

suggested that the loads delivered by Fuiava's wife constituted the bulk of the inventory listed in the invoice/agreement. (In view of the losses incurred by Dragon Light, Inc., there is hardly any mystery in what happened to these returned goods.) To attempt, however, to be any more specific with the ultimate division of the inventory among Chang and Fuiava would take us well within the realm of speculation.

Plaintiffs have simply failed in their burden to adduce sufficient proofs and judgment shall therefore enter accordingly.

It is so Ordered.